IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN LEE, #181952                          *
               Plaintiff,
     v.                                    *     CIVIL ACTION NO. CCB-16-439

THE MARYLAND DIVISION OF                   *
  CORRECTIONS
WAYNE A. WEBB                              *
PATRICIA GOINS-JOHNSON
KEITH LYONS                                *
ROSETTE SWAN
FRANCINE M. DAVIS                          *
             Defendants.

                      *****

**MEMORANDUM**

Jessup Correctional Institution ("JCI") inmate John Lee ("Lee") filed a self-represented 42 U.S.C. § 1983 complaint for injunctive relief relating to Lee's claim that JCI staff failed to follow the ruling of an Administrative Law Judge ("ALJ") allowing for the receipt of incoming personal mail (greeting cards).   ECF No. 1.   Lee subsequently was permitted to amend his complaint to seek damages.[1]   ECF Nos. 14 & 16.

Defendants, by their counsel, have filed a motion to dismiss or, in the alternative, a motion for summary judgment, accompanied by a declaration.   ECF No. 20.   Lee has filed an opposition response and a motion for discovery.   ECF Nos. 22 & 23.   Oral hearing is not needed to resolve the issues.   *See* Local Rule 106.5 (D. Md. 2016).   For the reasons to follow, defendants' motion, construed as a motion for summary judgment, will be granted and judgment will be entered in their favor.

---

[1]      Although granted leave to proceed in forma pauperis, Lee was ordered to remit the $350.00 filing fee in partial fee payments. According to the docket, the fee has been paid in full.

## Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF No. 20. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[2]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule

---

[2]    In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte* unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action" and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165–67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see Putney v. Likin*, 656 Fed. App'x 632, 638–39 (4th Cir. 2016).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)) explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly

denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods*, 302 F.3d at 244 (internal quotations omitted). But the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit and has said that a mere "reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit," the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal quotations omitted); *see also Putney*, 656 Fed. App'x at 638–40; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court served as the functional equivalent of an affidavit." *Harrods*, 302 F.3d 244–45 (internal quotations omitted). Moreover, "[t]his is especially true where . . . the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Lee has filed a motion for discovery seeking information bulletins and inmate administrative remedy procedure grievances that were issued and filed between January 2011 and August 2016 and which concern inmate mail and property.  ECF No. 23.  He has not filed an affidavit under Rule 56(d) nor has he indicated that such discovery is needed to properly respond to defendants' motion and declaration, which does include relevant information bulletins related to inmate mail.  Further, Lee's motion for discovery calls into question Local Rule 104.4 (D. Md. 2016) and Fed. R. Civ. P. 26(a)(1)(B)(iv), which provide that discovery shall not commence until a scheduling order is entered and that self-represented actions filed by prisoners are exempt from initial discovery disclosures.  A scheduling order was not entered in this case.  In light of the foregoing, I am satisfied that it is appropriate to address the defendants' opposed motion as one for summary judgment, both because it will facilitate resolution of the case and because the discovery sought by Lee is not needed for his response.  Lee's motion for discovery will be denied.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere

allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).   The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   But the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## DISCUSSION

Defendants explain that Lee's challenge relates to a new policy issued by the Division of Correction ("DOC") that bans all incoming greeting cards at any institution.   They argue that the ban was put in place after it was discovered that greeting cards were being used to smuggle the drug known as Suboxone[3] into different penal institutions.   ECF No. 20-1.[4]   They assert that the provision issued by JCI that prohibited greeting cards was not found to be unlawful or improper by an administrative law judge ("ALJ").   Rather, the ALJ found it was improper for JCI unilaterally to prevent inmates from sending and receiving greeting cards, absent a directive from

---

[3]      Suboxone contains a combination of buprenorphine (an opioid medication) and naloxone, which blocks the effects of the opioid medication.  Suboxane is used to treat narcotic (opioid) addiction.  *See* https://www.drugs.com/suboxone.html.

[4]      All citations to electronic exhibits and declarations are referenced by their designation on the automated docket.

the DOC outlining the ban.  In response, the DOC issued a revised directive adding greeting cards as "a form of" mail no longer permitted at the institution.  ECF No. 20-1.

## Prison Policy

Defendants affirm that in 2013, Patricia Goins-Johnson was the Warden at Patuxent Institution.  It came to the attention of the Department of Public Safety and Correctional Services ("DPSCS") that Suboxone was being smuggled into various correctional facilities and was being abused by inmates.  Suboxone is manufactured in sublingual film strips and is taken orally.  ECF No. 20-2, Goins-Johnson Decl.  Suboxone requires a prescription and is a dangerous drug.  If taken improperly or in excess, it can slow or stop a person's breathing.  *Id*.

According to Goins-Johnson, the drug was being smuggled into the prisons using greeting cards: the sublingual film was being hidden inside the cards.  The thick material used to make greeting cards can be cut open and the thin strips could be hidden within the greeting card inconspicuously.  The high volume of incoming mail, coupled with the thin film, made it very difficult to screen out.  *Id.*

Defendants further maintain that the DPSCS instructed wardens to issue an institutional bulletin barring greeting cards from the institution.  Postcards, letters, and other forms of communications are still allowed in the prisons.  *Id*.

## Lee's Grievance and Hearing Findings

Lee filed a grievance with the Inmate Grievance Office ("IGO") in May 2015 that challenged JCI's issuance of an institutional bulletin barring greeting cards from the institution.  ECF No. 1-1.  He claimed that a Christmas card sent by his family was returned to the sender without providing him any notice.  Lee was granted a hearing, and the IGO, through the Office

7

of Administrative Hearings ("OAH"), heard the matter.  On November 3, 2015, ALJ Henry

Abrams found that the JCI institutional bulletin barring greeting cards from JCI was improper

because it conflicted with division-wide directives.  He found that Division of Correction

Directive ("DCD") 250-1 governed which types of mail could be barred by the institution and

noted that it did not include a *per se* restriction on greeting cards.  He concluded that the JCI

institutional bulletin's outright restriction on greeting cards conflicted with DCD 250-1 and that

JCI should follow the policies set out in that DCD and allow inmates to receive greeting cards

"as long as the greeting cards abide by all other provisions of the DCD."  ECF No. 1-1.  The ALJ

found that the institutional bulletin was "an inferior directive that violates the superior, division–

wide DCD" and awarded Lee $10.00 in compensation.  *Id.*

Goins-Johnson became the Acting Commissioner for the DOC on October 13, 2015.  She

left that position on January 6, 2016, at which time she assumed the position of Executive

Director of Field Support services for the DPSCS.  Lee's IGO decision was reached while Goins-

Johnson was serving as Acting DOC Commissioner.   She suggests that she sought to modify the

directives so that there was consistency among DOC prisons regarding a ban on greeting cards.

On December 17, 2015, an information bulletin was issued on behalf of the DOC that prohibited

greeting cards from all DOC institutions.  ECF No. 20-2.  On May 10, 2016, the DPSCS issued a

new executive directive adopting the prohibition on greeting cards, which had previously been

addressed by the institutional bulletin and DOC directive.  *Id.*  It is now official policy under the

regulations governing mail that inmates cannot receive greeting cards.  *Id.*

In his opposition, Lee argues that defendants have attempted to circumvent the ALJ

decision by "re-writing the rules that were already consistent with state and [f]ederal law."  ECF

No. 22.  He accuses defendants of violating his due process rights consisting of a protected liberty or property interest.  Lee further claims that none of the defendants are immune from liability because they all failed to enforce the written procedures and that this failure resulted in a deprivation of his mail.  *Id*.

## Analysis

The Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).  To state a claim under § 1983, a plaintiff must allege that:  (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants assert that Lee's claims are subject to dismissal under Rule 12(b)(6) and/or subject to adverse judgment under Rule 56 on the grounds of Eleventh Amendment immunity, the failure to set out a claim against several defendants, and the failure to demonstrate a violation of his First Amendment rights.  The court shall address defendants' affirmative defense before examining Lee's constitutional allegations.

## Sovereign Immunity

It is argued that the DOC has not waived its sovereign immunity under the Eleventh Amendment to suit in federal court.  The court concurs.  Defendant DOC is a state agency

operating as a division of the Maryland DPSCS. *See* Md. Code. Ann., Corr. Servs. §§ 1-101(g) & 3-201. Neither a state nor an agency of a state is a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64–65, 70–71 (1989). Moreover, state agencies are immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000). Consequently, the complaint against DOC is subject to dismissal.

## Mail Policy

Inmates enjoy a First Amendment right to send and receive mail.[5] Such a right may be necessarily limited by the fact of incarceration and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security. Prison restrictions that impact the free exercise of communications but are related to legitimate penological objectives do not run afoul of the Constitution. *See Turner v. Safley*, 482 U.S. 78, 89–91 (1987). The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, the court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact the orderly operations of the prison; and whether there are readily available alternatives to the regulation that would be less restrictive. *Id*.

---

[5]     To the extent that Lee is claiming that the return of his non-privileged mail violated his Fourteenth Amendment due process property rights, no claim has been stated. Sufficient due process is afforded an inmate if the inmate has access to an adequate post-deprivation remedy – even if the deprivation of property was intentional. *See Parratt v. Taylor*, 451 U.S. 527, 542–44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Here, Lee took advantage of the IGO remedy available to him and initially received relief. Thus, he was afforded due process. *See Parratt*, 451 U.S. at 539–44.

Defendants have presented a clear penological objective, namely, to deter criminal activity and maintain prison security by restricting drugs and contraband from entering the facility through a known inconspicuous method, *i.e.*, the use of greeting cards to smuggle sublingual strips of Suboxone film into prisons.  Lee may still receive letters, postcards, prison visits, and telephone calls from family and friends.  He has presented no evidence to show that these alternative means of communicating are unavailable to him.  Next, the court must look at the adverse impact of an accommodation.  Defendants argue that allowing greeting cards would increase the likelihood of smuggling contraband (Suboxone strips) into prisons, which in turn would lead to conflicts, harm, and violence among inmates.  Lee does not refute this contention. The Supreme Court has stated that "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90.  Finally, the court need examine whether the policy represents an exaggerated response to an administrator's concerns.   Lee fails to show an easy, obvious alternative to the regulation.

Indeed, such bans have been found to be constitutionally permissible by other courts. *See Covell v. Arpaio*, 662 F. Supp. 2d 1146, 1153–55 (D. Ariz. 2009) (upholding policy of limiting incoming non-privileged mail after finding it was reasonably related to legitimate penological interest in reducing contraband smuggling of a variety of drugs); *Perkins v. Demeyo*, 2014 WL 5782769, *5–7 (D. Nev. 2014) (detention facility's postcard-only policy did not violate the First Amendment due to concerns of drug smuggling); *Althouse v. Palm Beach Cty. Sheriff's Office*, 2013 WL 536072, *5–6 (S.D. Fl. 2013) (upholding postcard-only mail policy partly because it was rationally connected to prison security).  Lee does not and cannot state that there

11

is no rational connection between the DOC/DPSCS policy and the stated purpose of reducing

contraband.  Further, he does not dispute that contraband can be smuggled through the mail.[6]

### Conclusion

Having found no genuine dispute of material fact justifying a trial on the merits in this

case, defendants' motion to dismiss or, in the alternative, motion for summary judgment,

construed as a motion for summary judgment, will be granted.  A separate Order shall be entered

forthwith.


Date:  February 22, 2017                          _____/S/_____
                                                 Catherine C. Blake
                                                 United States District Judge

---

[6]      Contraband smuggling in correctional institutions is a stubborn problem.  Prison officials are finding that Suboxone is being smuggled into prisons by mail.  Smugglers are taking advantage of the formulation of the drug that comes in thin orange strips, which can be hidden behind stamps and envelope seams.  *See* http://www.drugfree.org/news-service/suboxone-smuggled-into-prison-in-new-and-innovative-ways/.      Indeed, in October 2016, individual inmates and correctional officers were charged in this court with racketeering and drug conspiracies that involved the smuggling of heroin, cocaine, and Suboxone, among other narcotics, into the Eastern Correctional Institution in Westover, Maryland.  *See United States v. Bell*, Criminal No. JKB-16-0485 (D. Md.).